UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| MATTHEW MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br><br>vs.<br><br>LAKEVIEW LOAN SERVICING, LLC,<br><br>Defendant | Case No.: 1:22-cv-21054<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matthew Myers ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Lakeview Loan Servicing, LLC ("Defendant" or "Lakeview"), and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

## I.     INTRODUCTION

1.     This action arises from an ongoing failure by Lakeview to secure the sensitive personal information of its customers and employees. Lakeview, the fourth largest mortgage loan servicer in the United States, obtains personally identifying information related to its customers— current and former mortgagees, as well as mortgage applicants—in furtherance of services it performs on their behalf.[1]

2.     Plaintiff brings this class action against Lakeview for its failure to properly secure and safeguard sensitive Personally Identifiable Information provided by and belonging to its customers, including, without limitation, name, address, loan number, and Social Security number

---

[1]     https://lakeview.com (last visited April 7, 2022).

and, for some, information provided in connection with a loan application, loan modification, or other items regarding loan servicing ("PII").

3.      On or around October 27, 2021, an intruder accessed the PII stored on Lakeview's network system, from which it accessed, exfiltrated and/or compromised information (the "Data Breach"). In early December 2021, Lakeview identified this security incident involving unauthorized access to its file servers, having determined that an unauthorized person obtained access to files on its file storage servers from October 27, 2021 to December 7, 2021.

4.      Defendant determined that the unauthorized actor accessed and exfiltrated the PII of more than 2,537,261 current and former Lakeview customers ("Class Members"), including that of Plaintiff.

5.      Thereafter, on or around March 18, 2022, Defendant began notifying Plaintiff and Class Members of the Data Breach.  On March 21, 2022, Defendant notified the Texas Office of the Attorney General of the data breach and reported that 255,762 Texans were affected.

6.      By collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to these individuals.   As Defendant acknowledges, the unencrypted PII accessed and exfiltrated includes highly sensitive information, such as names, addresses, phone numbers, loan numbers, and Social Security numbers.

7.      The exposed PII of Defendant's current and former customers can be sold on the dark web. Plaintiff is informed and believe that his information has already been placed onto the dark web, which can now be accessed and/or offered for sale to criminals. Plaintiff and Lakeview customers face a lifetime risk of identity theft, heightened by the loss of their Social Security numbers.

8.      Defendant's negligent and/or careless acts and omissions and the failure to protect PII of Defendant's current and former customers compromised Class Members' PII.  Defendant's conduct amounts to negligence and violates federal and state statutes.

9.      Until notified of the breach, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

10.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Defendant's current and former customers; (ii) warn Defendant's current and former customers of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities.

11.      Plaintiff and Class Members have suffered numerous actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' PII, and, at the very least, are entitled to nominal damages.

12.      Lakeview disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Defendant's current and former customers' and employee's PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding

the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

13.     Plaintiff, by this action, seeks compensatory damages together with injunctive relief to remediate Lakeview's failure to secure their and Class Members' PII, and to provide credit monitoring, identity theft insurance, and credit repair services to protect the Class of Data Breach victims from identity theft and fraud.

## II.     PARTIES

### Plaintiff Matthew Myers

14.     Plaintiff Matthew Myers is a resident and citizen the State of Texas and intends to remain domiciled in and a citizen of the State of Texas.

15.     On April 4, 2022, Plaintiff Myers received a letter dated March 18, 2022 from Defendant concerning the Data Breach. The letter acknowledged that unauthorized actors had gained access to Lakeview Loan Servicing's network containing names, addresses, loan numbers, Social Security number, and for some, information provided in connection with a loan application, loan modification, or other items regarding loan servicing. The letter informed Plaintiff Myers that the incident involved some of his information and advised of steps that Plaintiff Myers should consider taking to protect himself in response to the Data Breach.

### Defendant Lakeview Loan Servicing, LLC

16.     Defendant Lakeview Loan Servicing, LLC ("Lakeview") is a private mortgage loan servicer organized under the laws of Florida, headquartered at 4425 Ponce de Leon Blvd, Coral Gables, FL 33146, with its principal place of business in Coral Gables, FL.

17.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of Court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

18.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III.     JURISDICTION AND VENUE

19.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 Class Members and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Moreover, Plaintiff, numerous other Class Members, and Defendants are citizens of different states.

20.     The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operated, conducted, engaged in, or carried on a business or business venture in Florida; had offices in Florida; committed tortious acts in Florida; and/or breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida. Defendant is organized under the laws of Florida and headquartered at 4425 Ponce de Leon Blvd, Coral Gables, FL 33146, with its principal place of business in Coral Gables, FL.

21.     Venue is proper in this district under 28 U.S.C. §§ 1391(a)(1), 1391(b)(1), 1391(b)(2), and 1391(c)(2) as a substantial part of the events giving rise to the claims emanated from activities within this district, Defendant conducts substantial business in this district, and Defendant resides in this district. Further, Defendant is headquartered and does business in and/or has offices for the transaction of its customary business in this district.

## IV.     FACTUAL ALLEGATIONS

**Lakeview – One of the Nation's Largest Loan Service Providers**

22.     Defendant is the fourth largest mortgage loan servicer in the United States, owns the servicing rights to millions of Americans' mortgage loans, and partners with a number of Servicing entities "process payments, manage the escrow, and provide customer service for [more than 1.4 million individuals'] existing mortgage[s]" per year.[2]

23.     Class Members who obtained loan services from Defendant entrusted their sensitive and confidential information, including, for example:  name, address, loan number, Social Security number, and additional information provided in connection with a loan application, loan modification, or other items regarding loan servicing.  This highly personal and confidential information entrusted to Defendant can be used to commit myriad financial crimes.

24.     In acquiring or providing services to Plaintiff and Class Members, Defendant produced and retained additional sensitive personal information about Plaintiff and Class Members, including information specific to Defendant's loan services.

25.     Plaintiff and Class Members, as current and former customers of Defendant, relied on and required Defendant to safeguard and keep their PII confidential and their securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

26.     At all times material, Defendant had a duty to adopt and maintain reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to or access by third parties.

---

[2]     https://lakeview.com (last visited April 7, 2022).

***The Data Breach***

27.     Defendant has a posted Privacy Policy on its website.[3] The Privacy Policy states that Defendant collects personal information from its customers, that financial companies "choose how they share your personal information"—though consumers have rights with respect to the sharing of that information—and that Defendant does not sell consumer information.[4]

28.     On or around October 27, 2021, an intruder gained unauthorized access to the Lakeview network. Lakeview discovered the intrusion on or around December 7, 2021.  Before that discovery, the intruder accessed and exfiltrated the PII of 2,537,261 individuals.

29.     On or around March 21, 2022, Defendant reported the Data Breach to the Office of the Attorney General of the State of Texas.  Lakeview also notified additional states' Attorneys General Offices commencing on or about March 18, 2022.

30.     On or about that date, Defendant also began notifying Plaintiff and Class Members of the Data Breach.

31.     On or around March 18, 2022, Defendant sent Plaintiff and Class members a form "Notice of Data Breach" substantially similar to the sample letters provided to the state Attorneys General.[5]

32.     The sample letters, which slightly varied in length and detail generally stated in part:

> Lakeview Loan Servicing, LLC ("Lakeview") understands the importance of protecting the information we maintain. We are writing to inform you of an incident that involved some of your information. This notice explains the incident, measures we have taken, and steps that you may consider taking.
>
> Lakeview owns the servicing rights to your mortgage loan. A security incident involving unauthorized access to our file servers was identified in early December 2021. Steps were immediately taken to contain the incident,

---

[3]     Ex. 1.

[4]     *See id.*
[5]     Ex. 2.

notify law enforcement, and a forensic investigation firm was engaged. The investigation determined that an unauthorized person obtained access to files on our file storage servers from October 27, 2021 to December 7, 2021. The accessed files were then reviewed by our investigation team to identify the content.

On January 31, 2022, the review process generated a preliminary list of individuals, including you, whose name, address, loan number, and Social Security number were included in the files. We then took extensive measures to review that list to ensure accuracy and prepare the list to be used to mail notification letters. For some, the accessed files may also have included information provided in connection with a loan application, loan modification, or other items regarding loan servicing. The additional loan related information in the files is not the same for all individuals.

We regret that this incident occurred and apologize for any inconvenience. Additional steps are being taken to further enhance our existing security measures.[6]

33.      The sample letter admitted that unauthorized third persons accessed and removed from Lakeview's network systems sensitive information about current and former customers, including, for example: "name, address, loan number, and Social Security number" and, "information provided in connection with a loan application, loan modification, or other items regarding loan servicing."[7]

34.      Plaintiff's and Class Members' unencrypted information has already been leaked onto the dark web, and/or may simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of the affected current and former customers.  As a result of Defendants negligence, breach of duty and failure to adequately secure PII, unauthorized individuals are able to access the PII of Plaintiff and Defendant's current and former customers.

35.      Defendant did not use reasonable security procedures and practices suitable or adequate to protect the sensitive, unencrypted information it was maintaining for current and

---

[6]      Ex. 2.

[7]      *Id.*

former customers, causing the access and/or exfiltration of the PII of more than 2,537,261 individuals.

36.     Defendant requires that its customers entrust Defendant with highly confidential PII.  They must rely on Defendant to do so.

37.     By obtaining, collecting, and storing Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

38.     Plaintiff and the Class Members, as current and former customers, relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Defendant Failed to Properly or Adequately Secure PII and Guard Against or Prevent its Data Breach and Theft***

39.     The Data Breach could have been prevented had Defendant properly secured and encrypted Plaintiff's and Class Members' PII, destroyed data, including old data Lakeview had no legal right or responsibility to retain.

40.     To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users, configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[8]

---

[8]     How to Protect Your Networks from Ransomware, available at https://www.justice.gov/criminal-ccips/file/872771/download (last visited April 7, 2022).

41.     To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- Update and patch your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- Use and maintain preventative software programs. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[9]

42.     To prevent and detect cyber-attacks attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**
- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**
- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities

- Hunt for brute force attempts

---

[9]     *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at: https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited April 7, 2022).

- Monitor for cleanup of Event Logs

- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for

Office [Visual Basic for Applications].[10]

43.    Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyber-attacks.

44.    Upon information and belief, the occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of an undisclosed amount of current and former consumers, including Plaintiff and Class Members.

45.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

46.    Defendant's failure to keep secure current and former customers' PII has had and shall continue to have adverse effects that are long lasting and severe. Once Social Security numbers and other PII have been stolen, fraudulent use of that information and damage to victims may continue for years.

***Personal Identifiable Information is Highly Valuable to Criminals***

47.    PII of individuals is highly valuable to criminals, who pay high prices for it on the dark web. For example, personal information can be sold at a price ranging from $40 to $200, and

---

[10]    *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at: https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited April 7, 2022).

bank details have a price range of $50 to $200. Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web. Criminals also can purchase access to entire sets of information obtained from company data breaches from $900 to $4,500.

48.     Social Security – among the most sensitive kind of personal information – can be used to a variety of fraudulent ways.  They are difficult for an individual to change. As the Social Security Administration stresses, the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

49.     An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.  Bryan Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions worrying-about-identity-theft (last accessed Mar. 30, 2022).

50.     A new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number." *Id.*

51.     Personally Identifiable Information and Social Security numbers are worth far more than credit card information on black market.

52.     The PII of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.  There may be a time lag between when harm occurs and when it is discovered, or between when PII is stolen and when it is used.

53.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Defendant's current and former customers' PII, including Social

Security numbers and financial account information, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Defendant's current and former customers as a result of such a breach.

54.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damage in addition to any fraudulent use of their PII.

55.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, comprising millions of individuals' detailed and confidential personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

56.     Although Defendant has offered its current and former customers identity monitoring services for a limited time through Kroll, the offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

57.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Defendant's current and former customers.

***Plaintiff Matthew Myers' Experience***

58.     When Plaintiff Myers purchased his home, he applied for and was granted a mortgage.  Lakeview Loan Services' took over his mortgage in August 2019.  Upon information and belief, Plaintiff Myers' PII was provided as part of his loan services, and was entered into Lakeview's database and maintained by Defendant.

59.     Plaintiff Myers greatly values his privacy and PII, especially when receiving loan and financial services. Prior to the Data Breach, Plaintiff Myers took reasonable steps to maintain the confidentiality of his PII.

60.     On April 4, 2022, Plaintiff Myers received a letter dated March 18, 2022 from Defendant concerning the Data Breach.[11] The letter stated that unauthorized actors gained access to Lakeview Loan Servicing's network containing his name, address, loan number, Social Security number, and potentially, information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

61.     Recognizing the present, immediate, and substantially increased risk of harm Plaintiff Myers faces, Defendant offered him a two-year subscription to a credit monitoring service. However, Plaintiff Myers has not signed up for the program, as he has an inherent mistrust of the Defendant following the Data Breach.

62.     Since learning of the Data Breach, Plaintiff Myers has spent additional time reviewing his bank statements and credit cards.

63.     Plaintiff Myers has experienced an increase of other spam calls, text messages and emails after the Data Breach.

64.     The Data Breach has caused Plaintiff Myers to suffer significant fear, anxiety, and stress, which has been compounded by the fact that Lakeview has not been forthright with information about the Data Breach.

65.     Plaintiff Myers plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his depository, credit, and other accounts for any unauthorized activity.

66.     Plaintiff Myers is very careful about sharing his PII.  He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

67.     Plaintiff Myers has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

---

[11]     Ex. 2.

## V.    CLASS ALLEGATIONS

68.    Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4), and/or 23(c)(5), Plaintiff seeks to bring this class action on behalf of himself and a Class (the "Class") defined as follows.

> All individuals in the United States whose PII was accessed  or exfiltrated during the Data Breach of Lakeview Loan Servicing, LLC, in 2021 and/or announced by Defendant on or about March 17. 2022 (the "Nationwide Class").

69.    Plaintiff also seeks certification of a Texas sub-class defined as follows:

> All individuals residing in Texas whose PII was accessed or exfiltrated during the Data Breach of Lakeview Loan Servicing LLC in 2021, and/or announced by Defendant on or about March 17, 2022 ("Texas sub-class") (collectively the Nationwide class and Texas subclass are referred to as the "Class").

70.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

71.    Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

72.    Numerosity. Consistent with Fed. R. Civ. P. 23(a)(1), the Class Members are so numerous that their joinder is impracticable. While the exact number of Class Members is unknown, upon information and belief, it is in excess of two and a half million. The number and identities of Class Members can be ascertained through Defendant's records.

73.    Commonality. Consistent with Fed. R. Civ. P. 23(a)(2) and (b)(3), questions of law

and fact common to the Class exist and predominate over any questions affecting only individual

Class Members. These include:

a.    Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class
      Members;

b.    Whether and to what extent Defendant had a duty to protect the PII of Plaintiff
      and Class Members;

c.    Whether Defendant had duties not to disclose the PII of Plaintiff and Class
      Members, respectively, to unauthorized third parties;

d.    Whether Defendant had a duty not to use the PII of Plaintiff and Class Members
      for non-business purposes;

e.    Whether and when Defendant learned of the Data Breach;

f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and
      Class Members that their PII had been compromised;

g.    Whether Defendant committed violations by failing to promptly notify Plaintiff
      and Class Members that their PII had been compromised;

h.    Whether Defendant failed to implement and maintain reasonable security
      procedures and practices adequate to protect the information compromised in the
      Data Breach, considering its nature and scope;

i.    Whether Defendant has adequately addressed and fixed the vulnerabilities which
      permitted the Data Breach to occur;

j.    Whether Defendant engaged in unfair, unlawful, or deceptive practices, including
      by failing to safeguard the PII of Plaintiff and Class Members;

k.    Whether Plaintiff and Class Members are entitled to actual, consequential, and/or
      nominal damages as a result of Defendant's wrongful conduct, and if so, in what
      amount;

l.    Whether Plaintiff and Class Members are entitled to restitution as a result of
      Defendant's wrongful conduct, and if so, in what amount; and

m.    Whether Plaintiff and Class Members are entitled to injunctive relief to redress
      the imminent and currently ongoing harm faced as a result of the Data Breach.

74.    <u>Typicality</u>. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical

of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance, and their claims arise under the same legal doctrines.

75. <u>Policies Generally Applicable to the Class</u>. As provided under Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct in relation to the Class and making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiff challenges these policies by reference to Defendant's conduct with respect to the Class as a whole.

76. <u>Adequacy of Representation</u>. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff does not have any disabling conflict of interest with any other Member of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class, and the infringement of rights and the damages they have suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and they intend to prosecute this action vigorously.

77. <u>Superiority and Manageability</u>. Consistent with Fed. R. Civ. P. 23(b)(3), class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. Among other things, it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Moreover, class action treatment will permit the adjudication of relatively modest claims by Class Members who could not individually afford to litigate a complex claim against a large corporation such as Defendant. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

78. Particular issues, such as questions related to Defendant's liability, are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the resolution of such common

issues would materially advance the resolution of this matter and the parties' interests therein.

79.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. Prosecution of separate actions by Class Members also would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

80.     Plaintiff re-alleges and incorporates by reference herein each of the allegations contained in paragraphs 1 through 79.

81.     As a condition of receiving their mortgages from partners of Defendant, Defendant's current and former customers were obligated to provide and entrust Defendant with certain PII, including their name, birthdate, address, loan number, Social Security number, and information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

82.     Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

83.     Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed or obtained by unauthorized parties.

84.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of its current and former customers' PII involved an

unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

85.     Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class Members' information in Defendant's possession was adequately secured and protected.

86.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII it was no longer required to retain pursuant to regulations.

87.     Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and the Class's PII, and to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Class.

88.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a mandatory step in obtaining services from Defendant.

89.     Defendant were subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

90.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

91.     Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of adequately safeguarding that PII, and the necessity of encrypting PII stored on Defendant's systems.

92.     Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's wrongful conduct included, but was not limited to, its failure to take the steps

and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiff's and the Class's PII, including basic encryption techniques available to Defendant.

93.     Plaintiff and the Class had no ability to protect their PII that was in, and remains in, Defendant's possession.

94.     Defendant was in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

95.     Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

96.     Defendant has admitted that the PII of Plaintiff and the Class was wrongfully accessed by unauthorized third persons as a result of the Data Breach.

97.     Defendant, through its actions and inaction, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class when the PII was within Defendant's possession or control.

98.     Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

99.     Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former customers' PII in the face of increased risk of theft.

100.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former customers' PII.

101.    Defendant breached its duty to exercise appropriate clearinghouse practices by

failing to remove former customers' PII it was no longer required to retain pursuant to regulations.

102.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

103.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised.

104.    There is a close causal connection between (a) Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and (b) the harm or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff's and the Class' PII was accessed and exfiltrated as the direct and proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

105.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, such as Defendant, of failing to implement reasonable measures to protect PII. The FTC Act and related authorities form part of the basis of Defendant's duty in this regard.

106.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiff and the Class.

107.    Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

108.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

109.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

110.     As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

111.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

112.     Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

113.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff is now at an increased risk of identity theft or fraud.

114.     As a direct and proximate result of Defendant's negligence and negligence *per se*,

Plaintiff is entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
## Breach of Implied Contract
## (On Behalf of Plaintiff and the Class)

115.    Plaintiff and the Class re-allege and incorporate by reference herein each of the allegations contained in paragraphs 1 through 79.

116.    Defendant acquired and maintained the PII of Plaintiff and the Class, including name, birthdate, address, loan number, Social Security number, and information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

117.    At the time Defendants acquired the PII and PII of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the PII and not take unjustified risks when storing the PII.

118.    Plaintiff and the Class would not have entrusted their PII to Defendants had they known that Defendants would make the PII internet-accessible, not encrypt sensitive data elements such as Social Security numbers, and not delete the PII that Defendants no longer had a reasonable need to maintain.

119.    Prior to the Data Breach, Defendant published the Privacy Policy, agreeing to protect and keep private financial information of Plaintiff and the Class.

120.    Defendant further promised to comply with industry standards and to ensure that Plaintiff's and Class Members' PII would remain protected.

121.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class

Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

122. In collecting and maintaining the PII of Plaintiff and the Class and publishing the Privacy Policy, Defendant entered into contracts with Plaintiff and the Class requiring Defendant to protect and keep secure the PII of Plaintiff and the Class.

123. Plaintiff and the Class fully performed their obligations under the contracts with Defendant.

124. Defendant breached the contracts they made with Plaintiff and the Class by failing to protect and keep private financial information of Plaintiff and the Class, including failing to (i) encrypt or tokenize the sensitive PII of Plaintiff and the Class, (ii) delete such PII that Defendant no longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the internet where such accessibility was not justified, and (iv) otherwise review and improve the security of the network system that contained such PII.

125. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

126. As a direct and proximate result of Defendant's breach of contract, Plaintiff is at an increased risk of identity theft or fraud.

127. As a direct and proximate result of Defendant's breach of contract, Plaintiff is entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

### COUNT III
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

128.     Plaintiff and the Class re-allege and incorporate by reference herein each of the allegations contained in paragraphs 1 through 79.

129.     A relationship existed between Plaintiff and the Class and Defendant in which Plaintiff and the Class put their trust in Defendant to protect the private information of Plaintiff and the Class. Defendant accepted that trust and the concomitant obligations.

130.     Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

131.     Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

132.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of its current and former customers' PII involved an unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

133.     Defendant's fiduciary duty required it to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and the Class's information in Defendant's possession was adequately secured and protected.

134.     Defendant also had a fiduciary duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and the Class's PII. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from

Defendant, and because Defendant was the only party in a position to know of its inadequate security measures and capable of taking steps to prevent the Data Breach.

135. Defendant breached the fiduciary duty that it owed to Plaintiff and the Class by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and the Class.

136. Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class.

137. But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred.

138. Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class.

139. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff is entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Class as defined herein, and appointing Plaintiff and their counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.     requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personally identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.     requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personally identifying information of Plaintiff and Class Members;

v.      prohibiting Defendant from maintaining Plaintiff's and Class Members' personally identifying information on a cloud-based database;

vi.     requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.     requiring Defendant to segment data by, among other things, creating

28

firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other areas of Defendant's systems;

x.      requiring Defendant to conduct regular database scanning and securing checks; xi.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personally identifying information, as well as protecting the personally identifying information of Plaintiff and Class Members;

xi.     requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personally identifying information;

xiii.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.    requiring Defendant to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential personally

identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

D.  For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.  For an award of reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

F.  For prejudgment interest on all amounts awarded; and

G.  Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Date: April 7, 2022                                    Respectfully submitted,

                                                      /s/ David J. George
                                                      David J. George (FBN 898570)
                                                      Brittany L. Brown (FBN 105071)
                                                      GEORGE GESTEN MCDONALD, PLLC
                                                      9897 Lake Worth Road, Suite #302
                                                      Lake Worth, FL 33467
                                                      Phone: (561) 232-6002
                                                      Fax: (888) 421-4173
                                                      Email: DGeorge@4-Justice.com
                                                              BBrown@4-Justice.com
                                                      E-Service: eService@4-Justice.com

GEORGE GESTEN MCDONALD, PLLC
LORI G. FELDMAN
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

EMERSON FIRM, PLLC
JOHN EMERSON
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile:  (501) 286-4659

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on April 7, 2022, a true and correct copy of the foregoing has been furnished via email through the Florida Court E-Filing Portal to all counsel of record.


/s/ David J. George
David J. George